## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONALD CHESTER REECE** | **CIVIL ACTION NO. 19-669-JWD-EWD** |
| **VERSUS** | **JUDGE JOHN W. deGRAVELLES** |
| **KIMBERLY HAMM; REBECCA DEMARCO; CARLEN BOURGEOIS; NORMAN WEISS; HONORABLE KEVIN K. MCALEENAN; HONORABLE DAVID P. PEKOSKE** | **MAG. JUDGE ERIN WILDER-DOOMES** |

## RULING AND ORDER

Pending before the Court is the Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed by Defendants, Kimberly Hamm ("Hamm"), Rebecca DeMarco ("DeMarco"), Carlen Bourgeois ("Bourgeois"), and Norman Weiss ("Weiss") (collectively, "the individual Defendants" or "Defendants").[1] (Doc. 9). Plaintiff, Donald Chester Reece ("Plaintiff" or "Reece"), opposes the motion. (Doc. 12). Defendants[2] replied. (Doc. 15). Oral argument is not necessary.

The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, the individually named Defendants' motion is granted, and Plaintiff's claims against Hamm, Bourgeois, DeMarco, and Weiss are dismissed for lack of subject matter jurisdiction. However, Plaintiff shall be granted

---

[1] The "United States' Motion to Dismiss" states that it is brought "on behalf of the individually named Defendants." (Doc. 9). Nowhere does the motion state who the "individually named Defendants" are. A review of the Petition for Damages reveals that the named Defendants are: Kimberly Hamm; Rebecca DeMarco; Carlen Bourgeois; Norman Weiss; Honorable Kevin K. McAleenan, in his official capacity as the acting Secretary of the Department of Homeland Security ("McAleenan"); and Honorable David P. Pekoske, in his official capacity as the Administrator of the Transportation Security Administration ("Pekoske"). (Doc. 1-2 at 5-8). All of these Defendants are individuals, although not all named in their individual capacities. The Court surmises that the "individually named Defendants" are Hamm, DeMarco, Bourgeois, and Weiss because McAleenan and Pekoske are named in their official capacities.

[2] The "United States of America" filed a reply memorandum. (Doc. 15). Nowhere in the reply is there a reference to the "individually named Defendants", as referenced in the motion.

1

leave to amend his complaint to cure any deficiencies. If Plaintiff fails to do so within the prescribed time, the Court will enter a final judgment dismissing his claims against Hamm, Bourgeois, DeMarco, and Weiss without prejudice.

## I.    Relevant Factual and Procedural Background

### A.    Factual Allegations and Claims Made

Plaintiff was a long-time employee of the Transportation Security Administration ("TSA"), working as a Transportation Safety Officer at the Baton Rouge Metropolitan Airport ("Airport"), where he acted as a "security officer and screener of airline passengers." (Doc. 1-2 at 8). Plaintiff was disciplined after he was the subject of two workplace complaints, and his employment with TSA was ultimately terminated on December 19, 2018. (*Id.*).

On September 5, 2019, Plaintiff filed a Petition for Damages ("Petition") against Defendants[3] in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, asserting various Louisiana state law claims related to the circumstances surrounding his termination from TSA. (Doc. 1-2 at 5-15). Defendants are all individuals who, according to Plaintiff, played a role in his termination as his co-workers, supervisors, and the heads of the agency for which Plaintiff worked. Hamm,[4] DeMarco,[5] Bourgeois,[6] and Weiss[7] were federal civilian employees with TSA and co-workers of Plaintiff at the Airport at the time of his

---

[3] Here, "Defendants" includes the individually named Defendants as well as McAleenan and Pekoske.

[4] Plaintiff alleges that Hamm was his "co-worker and co-employee" at the Airport at all times relevant to Plaintiff's claims. (Doc. 1-2 at 1, 8). Hamm worked for TSA as a Lead Transportation Security Officer at the Airport, and she was Plaintiff's superior. (Doc. 1, ¶ 2).

[5] Plaintiff alleges that DeMarco was his "co-worker" and a "Manager for TSA" at the Airport at all times relevant to Plaintiff's claims. (Doc. 1-2 at 2, 8). DeMarco worked for TSA as a Transportation Security Manager at the Airport. (Doc. 1, ¶ 3).

[6] Plaintiff alleges that Bourgeois was his "co-worker and/or supervisor" and a Human Resource Specialist at the Airport at all times relevant to Plaintiff's claims. (Doc. 1-2 at 2). Bourgeois worked for TSA, and she was Plaintiff's former Human Resource Specialist. (Doc. 1, ¶ 4).

[7] Plaintiff alleges that Weiss was his "co-worker and supervisor" at the Airport at all times relevant to Plaintiff's claims. (Doc. 1-2 at 2). Weiss worked for TSA as a Supervisory Transportation Security Officer, and he was Plaintiff's "direct supervisor." (Doc. 1, ¶ 5).

termination.  DeMarco, Bourgeois, and Weiss were Plaintiff's superiors.  Pekoske was and is the Administrator of TSA, and McAleenan was the acting Secretary of the Department of Homeland Security ("DHS"), which is the parent agency of TSA.  (Doc. 1-2 at 7-8).  Plaintiff sued Pekoske and McAleenan in their official capacities because they are "charged with the workplace supervison and conduct of those [DHS and] TSA employees named [as] defendants and their damaging and tortuous [sic] conduct."  (*Id*.).

In his Petition, Plaintiff alleges that on September 13, 2018, he "was disciplined and put on disciplinary notice" because of an "alleged passenger complaint" stemming from comments Plaintiff purportedly made to an unknown passenger "during the course and scope of [Plaintiff's] regular work at his regular post [*i.e*., the Airport]."  (Doc. 1-1 at 8).  Although Plaintiff denies making the comments, he claims his co-workers and supervisors, Weiss and Bourgeois, "honored" and "[presumably] believed" the passenger's complaint.  (*Id*.).  Plaintiff further claims that DeMarco, "in her position as Manager and Supervisor of [Plaintiff's] workplace[,] affirmed the false accusation against [Plaintiff] and subjected him to baseless disciplinary measures."  (*Id*.).

Plaintiff claims he was the "subject" of a second complaint about one and one-half months later.  (Doc. 1-2 at 8-9).  Plaintiff claims that his "TSA co-worker and co-employee," Hamm, "falsely" accused him of "inappropriately touching her and harassing her."  (*Id*.).  Plaintiff denied that he inappropriately touched or harassed anyone, including Hamm.  (*Id*.).  Despite this, Plaintiff again alleges that his "TSA co-workers and supervisors," DeMarco, Bourgeois, and Weiss, "honored" and "believed" Hamm's "complaints and falsehoods."  (*Id*.).  Plaintiff alleges that he was "immediately disciplined and placed on administrative leave on November 1, 2018" because of Hamm's complaint.  (*Id*.).

3

Plaintiff's employment with TSA was terminated on December 18, 2018.  (*Id.*).  Plaintiff alleges that his "wrongful termination" was "directly cause[ed]" by Hamm's complaint.  (*Id.*).  He also alleges that DeMarco, Weiss, and Bourgeois are "directly responsible" for his termination because they affirmed and believed the "baseless" complaints against Plaintiff.

Plaintiff claims he suffered damages because of Hamm's "wrongful accusations"; the other Defendants' affirmation of and belief in those "wrongful" and "false" accusations; and his "baseless and wrongful employment termination" from TSA.  (Doc. 1-2 at 4-6).  His alleged damages include the loss of his employment with TSA and other "losses flowing there from [sic]," which include mental anguish and emotional devastation; loss of "earned seniority" with TSA; "lost wages, missed work, and damaged job and/or credit rating, and missed employment and/or educational opportunities…;" damage to Plaintiff's "reputation, employment prospects, [and] employability"; medical expenses; loss of enjoyment of life; and "slander and intentional damage to [Plaintiff's] reputation;" etc.  (Doc. 1-2 at 4-6, 13-14).

Plaintiff filed suit against the Defendants in Louisiana state court, asserting various state law tort and negligence claims.  (Doc. 1-2 at 5-15).  Plaintiff states that his claims arise "under all state laws applicable to such incidences and in particular Louisiana Civil Code Art. 2315, which allows civil damages to be legally assessed against those defendants whose acts, omissions, negligence or intentional actions damage another."  (Doc. 1-2 at 11).  Plaintiff accuses Hamm, DeMarco, Weiss, and Bourgeois of the following tortious or negligent actions: (1) defamation; (2) slander; (3) harassment, targeting, discrimination, and creating a hostile work environment; (4) infliction of emotional distress; and (5) "[a]ny and all other tortuous [sic] actions and claims." (Doc. 1-2 at 11-13).

Plaintiff also complains of the following tortious or negligent actions or omissions by DeMarco, Weiss, Bourgeois, McAleenan, and Pekoske: (1) "carelessly and/or knowingly allowing certain co-worker employees, particularly defendant Hamm, to not properly or thoroughly investigate the false allegations of an alleged October 31, 2018 inappropriate touching incident alleged falsely by defendant Hamm against [Plaintiff] and allow [sic] the wrongful and baseless termination [of Plaintiff's employment] with TSA…;" (2) failure to remedy the hostile work environment suffered by [Plaintiff]"; and (3) "allowing a pattern of harassment and infliction of emotional distress upon and against [Plaintiff], as well as their obvious favoring of other employees by better treatment and non-harassment." (*Id.*).

Plaintiff also accuses McAleenan and Pekoske of the following tortious or negligent actions (or inactions): (1) allowing Plaintiff to endure targeting, harassment, and a hostile working environment prior to his termination due to lack of proper oversight, policy implementation, and supervision of TSA employees; (2) failing to maintain reasonable and proper control of the TSA workplace at the Airport; (3) failing to properly investigate and act on the incident and conditions present in the TSA workplace that created a hostile work environment for Plaintiff "leading up to [his] baseless wrongful termination"; and (4) "carelessly and/or knowingly allowing certain co-worker defendants, particularly defendants Weiss, Bourgeois and Hamm, to harass and discriminate against [Plaintiff] … in such a manner as to further exacerbate the hostile work environment." (*Id.*).

### B. Procedural Background

On October 2, 2019, the United States of America ("United States") "on behalf of the individually named federal officers and employees" named as Defendants in the Petition removed this matter because "Plaintiff's allegations against the various Defendants are based on conduct

5

that allegedly occurred within the federal workplace and are solely related to Plaintiff's service as a federal employee." (Doc. 1, ¶ 8). The United States asserted that removal was proper on two separate grounds – federal officer removal, 28 U.S.C. § 1442(a)(1), and the Westfall Act, 28 U.S.C. § 2679(d)(2).

On October 23, 2019, Plaintiff filed a Motion to Remand, seeking to have this matter remanded to Louisiana state court. (Doc. 5). Plaintiff argued that remand was appropriate because: (1) "this matter exclusively involves State Law Claims for defamation and injury," and (2) his claims against Defendants are "no[t] federal or state discrimination claims, but claims for defamation, injury and damages flowing from State Law violations and claims based solely upon those State Law violation." (Doc. 5-1 at 1-2). Magistrate Judge Wilder-Doomes recommended that the motion for remand be denied on June 19, 2020, (Doc. 20), and District Judge deGravelles adopted the Report and Recommendations, denying the motion for remand, on July 7, 2020. (Doc. 21).

Defendants now move to dismiss Plaintiff's Complaint based on lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Doc. 9).

### C.    The Instant Motion

#### 1.    Defendants' Argument

As an introduction to their two main arguments supporting a finding of lack of subject matter jurisdiction, Defendants explain that they are all federal employees and federal officials and that Plaintiff's allegations concern conduct within the federal workplace related to employment with the TSA. (Doc. 9-1 at 3). Plaintiff's claims are based on tort claims under Louisiana state law. The Federal Tort Claims Act ("FTCA") provides that an action against the United States is the exclusive remedy for injuries allegedly caused by the acts or omissions of federal employees

while acting within the scope of employment.  (*Id*. at 3-4 (citing 28 U.S.C. §§ 1346(b)(1), 2679(b)(1)).  Therefore, Defendants argue that since they are federal employees and were acting within the scope of their employment, this action must be construed as "solely against the United States," and the individual federal employee Defendants should be dismissed.  (*Id*. at 5 (citing *Walters v. Smith*, 409 F. App'x 782, 783 (5th Cir. 2011); *Cooper v. United States*, No. 09-284, 2010 WL 11530301, at *3-4 (E.D. Tex. Mar. 4, 2010)).

Defendants' motion to dismiss based on lack of subject matter jurisdiction is founded upon two arguments.  First, this Court can only hear a case removed from state court pursuant to 28 U.S.C. § 1442, federal officer removal, if the state court originally had subject matter jurisdiction, known as the derivative jurisdiction doctrine.  Here, Defendants argue that the state court did not have subject matter jurisdiction because the United States is a party, and the state court has no authority to hear claims concerning federal employment.  Because the state court did not have jurisdiction, this Court also lacks jurisdiction under the derivative jurisdiction doctrine.  (Doc. 9-1 at 2).  As Defendants succinctly argue:

> Under the FTCA, federal courts have exclusive jurisdiction to adjudicate claims for money damages for injuries arising from the alleged acts or omissions of federal employees acting within the scope of their federal employment.  *See* 28 U.S.C. §§ 1346(b)(1); 2679(b)(1).   The state court therefore lacked jurisdiction over Plaintiff's tort claims based on the alleged conduct of his superiors and coworkers at BTR.  Because the state court lacked jurisdiction, this court cannot acquire jurisdiction following removal under 28 U.S.C. § 1442(a)(1).  This Court therefore lacks subject-matter jurisdiction over Plaintiff's tort claims based on the alleged conduct of his superiors and coworkers.

(Doc. 9-1 at 6).

Second, Defendants assert sovereign immunity as a bar to Plaintiff's claims.  Plaintiff has "failed" to identify any waiver of sovereign immunity, and Defendants claim that there "is none."  Therefore, Plaintiff's claims should be dismissed.  (*Id*. at 2).

Defendants acknowledge that the "FTCA is a limited waiver of the United States' generally applicable sovereign immunity from lawsuits." (*Id*. at 7 (citing *United States v. Orleans*, 425 U.S. 807, 813 (1976)). However, Defendants argue that the "FTCA does not authorize a cause of action based on the allegations in Plaintiff's Complaint for three reasons." (*Id*. at 7). First, the FTCA "authorizes a lawsuit against the United States only once the plaintiff has presented his claims in writing to the appropriate federal agency and the agency has finally denied the claims or failed to make final disposition within six months." Here, Plaintiff has not presented his tort claims to TSA. (*Id*.). Second, the FTCA "does not authorize a lawsuit against the United States for '[a]ny claims arising out of … libel, slander, [or] misrepresentation[.]'" Therefore, Plaintiff's claims for slander are barred by the terms of the statute, and Plaintiff's "related tort claims" are barred by the statute because "it is clear they arise out of the alleged slander." (*Id*. at 8). Third, the FTCA does not authorize Plaintiff's claim for wrongful termination because it is not a "cognizable tort" under Louisiana state law. (*Id*. at 9). "Because Louisiana law does not recognize a claim for wrongful termination against a private employer, the FTCA does not authorize such a claim against the United States." (*Id*. at 10). Therefore, because the FTCA does not authorize a lawsuit against the United States for any of the claims pled in Plaintiff's Complaint, the United States retains its sovereign immunity, and the Court lacks subject matter jurisdiction. (*Id*.).

Finally, Defendants contend that the dismissal that they seek should be "with prejudice" because it is clear that the defects in Plaintiff's claims cannot be cured so as to allow any court to have jurisdiction over Plaintiff's claims. (*Id*. at 10-11).

### 2. Plaintiff's Argument

Plaintiff claims that the torts alleged in his Petition did not occur in the course and scope of Defendants' employment. (Doc. 12 at 2). Plaintiff contends that his claims are brought under

La. Civ. Code arts. 2315 and 2324, Louisiana state law, and Plaintiff avers that Defendants were "manipulative" in arguing that the FTCA applies because they knew that it limited Plaintiff's claims to the federal court. (*Id*. at 3). Plaintiff argues that the issue of whether Defendants' actions took place in the course and scope of employment is improper for decision on a motion pursuant to Rule 12(b)(1). (*Id*. at 3-4).

Further, Plaintiff contends that the "United States should not be substituted as a defendant here, and, the matter should be properly remanded to State District Court as sought via the Plaintiff's pending[8] motion." (Doc. 12 at 4). To that end, Plaintiff argues that the "records and evidence" necessary to prove his claims "must be obtained via proper discovery and will buttress the evidence of claims made by the Plaintiff here, as well as prove that the four defendants were indeed engaging in activities damaging him outside of the course and scope of their employment." (*Id*. at 5). Plaintiff then requests that the Court "allow discovery" to show that the individual Defendants were acting outside the course and scope of their employment. (*Id*. at 6). Plaintiff then admits that the "torts alleged against" McAleenan and Pekoske "were alleged here solely in their role as supervisors, and in failing to prevent the torts alleged by and unto [sic] the four above co-worker defendants." (*Id*.).

Regarding Plaintiff's defamation claim, he "insists" that the elements of his defamation claim "are present here to maintain his tort claims, and that this Court should rightly NOT dismiss Plaintiff's claims as somehow futile for not being actionable under Louisiana law if Remanded." (*Id*. at 7). Alternatively, if this matter is not remanded, Plaintiff argues that the exceptions to the FTCA apply, and Plaintiff's claims against the individual Defendants should be allowed. (*Id*.).

---

[8] At the time Plaintiff filed his opposition to Defendants' motion, on November 19, 2019, Plaintiff's motion to remand was pending. (Doc. 5, filed October 23, 2019). During the time that Defendants' motion was pending, Magistrate Judge Wilder-Doomes recommended that the motion to remand be denied, (Doc. 20), and Judge deGravelles adopted the recommendation and denied the motion to remand on July 7, 2020, (Doc. 21).

Specifically, Plaintiff argues, "Defendants Hamm, Dimarco, Bourgeois and Weiss are TSA employees employed as law enforcement officers with police powers, arrest powers and authorized to conduct searches, as contemplated by the exceptions made to the FTCA as cited above, and abused the Plaintiff via violations including emotional assault, IIED, abuse of process in swearing and attesting false violations and sexual touching by Plaintiff, damage him severely including job loss, emotional injury, and related financial hardship."  (*Id*. at 8).  "Therefore, the claims against the United States based on actions of Customs' agents can be considered under the FTCA, and should be maintained in this Court, and not dismissed here, should this matter not be remanded." (*Id*.).  Plaintiff proposes that "the Court should instead dismiss this matter without prejudice, allowing him to pursue administrative proceedings, given his claims falling under those narrow exceptions cited above."  (*Id*.).

Finally, Plaintiff contends that the holding of *Montez v. Department of Navy*, 392 F.3d 147 (5th Cir. 2004), requires Defendants' motion pursuant to Rule 12(b)(1) to be denied because "the scope of a 'course and scope' of employment question is too intertwined with the merits to be decided on a Rule 12(b)(1) motion at the jurisdictional stage, directing instead … a determination on the merits."  (*Id*. at 9).

### 3.    Defendants' Reply

In reply, Defendants state that "remand is not an option."  (Doc. 15 at 1).

Next, Defendants contend that "Plaintiff's self-serving assertions" that Defendants were not acting in the course and scope of their employment and that they were "out to get him" are not "competent evidence to overcome the U.S. Attorney's certification" and carry his burden. (*Id*. at 2).  Defendants criticize Plaintiff's request for discovery in this regard because he did not "support the request with any explanation of what type of evidence he would seek, or how that evidence

10

would prove that the accusations against him were in fact false, or that his coworkers were motivated exclusively by their own private interests entirely unrelated to TSA business." (*Id*. at 2-3). Defendants characterize the request for discovery as a "fishing expedition". (*Id*. at 3).

Defendants dispute the application of *Montez v. Department of Navy*.   (*Id*.).   First, Defendants argue that the question of whether Defendants were in the course and scope of their employment is not the sole issue and does not completely control the outcome of this case, as it did in *Montez*.   (*Id*. at 4).   Second, Defendants contend that *Montez* "appears to have been wrongly decided."   This contention is based upon the Fifth Circuit's expression of doubt "about whether a court can ever 'assume jurisdiction and proceed'" in *Houston Refining v. United Steel*, 765 F.3d 396, 407 n. 20 (5th Cir. 2014). (*Id*.). Ever since the Fifth Circuit questioned *Montez* in the *Houston Refining* opinion, the Fifth Circuit has not since followed *Montez*. (*Id*. at 4-5).

The law enforcement proviso in the FTCA "has no bearing on this case" because Plaintiff has not plead claims of intentional torts; therefore, the law enforcement proviso for torts not pled if of no moment. (*Id*. at 5).

Plaintiff did not respond to Defendants' argument that the derivative jurisdiction doctrine deprives the Court of the ability to hear this case; therefore, Plaintiff's opposition is waived. Plaintiff conceded that he did not exhaust his administrative remedies before filing suit, thereby conceding dismissal of this case.

## II.    Applicable Law

### A.    Motion to Dismiss Standard - Rule 12(b)(1)

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by

undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)....

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.    FTCA

Under the doctrine of sovereign immunity, the United States is immune from suit unless it has expressly consented to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). "The FTCA was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (internal quotation marks omitted). It provides for exclusive jurisdiction in federal district courts "over claims against the United States for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of a federal employee acting within the scope of his office or employment." *Id.* Under the FTCA, Plaintiff must prove whether at the time of the alleged acts Defendants were acting "within the course and scope of his office or employment." 28 U.S.C. § 1346(b)(1).

12

## III.    Discussion

The first issue that must be determined is whether the Defendants, federal employees, were acting within the scope of their office or employment at the time of the allegations made in Plaintiff's Complaint.  The "course and scope" inquiry determines whether the United States is the proper Defendant and whether this Court has subject matter jurisdiction to hear this matter. Defendants contend that they were acting within the course and scope of their employment; therefore, jurisdiction does not exist.  Plaintiff disputes that Defendants were acting within the course and scope of their employment and seeks remand to state court, or alternatively, discovery to further explore the "course and scope" inquiry before determining jurisdiction.

For the reasons set forth below, remand is no longer an option as this Court has already denied Plaintiff's motion to remand.  Jurisdictional discovery is not appropriate at this juncture as it was incumbent upon Plaintiff to come forward with evidence to overcome the United States' scope of employment certification, and Plaintiff did not do so.  Therefore, the Court analyzed whether it has subject matter jurisdiction to decide this matter and concluded that it does not based upon the derivative jurisdiction doctrine.

### A.    Scope of Employment Certification and Discovery

Plaintiff argues that the allegations of fact in this matter did not occur or arise out of the course and scope of Defendants' employment; therefore, the United States is not the proper Defendant, and the FTCA does not control Plaintiff's claims.  (Doc. 12 at 2-4).  As such, Plaintiff first seeks remand of this matter to state court.  (*Id*. at 4).  However, as stated above, this Court has already denied Plaintiff's motion to remand, and this is no longer a viable option.  (Doc. 21).

Plaintiff's secondary course of relief is discovery related to whether Plaintiff's allegations fall within the course and scope of Defendants' employment with the TSA.  (Doc. 12 at 5-6).

Plaintiff's argument is akin to a request for jurisdictional discovery. District courts have broad discretion to permit jurisdictional discovery. *See, e.g.*, *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982). "As the party opposing dismissal and requesting discovery, the plaintiff[ ] bear[s] the burden of demonstrating the necessity of discovery." *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013). Plaintiff is not entitled to discovery "if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009). The Court notes that the Plaintiff's burden is higher where, as here, "the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Id.*

In support of their removal of this matter from state court, Defendants filed a certification by the United States Attorney as to the scope of employment of the Defendants. (Doc. 1-4). The certification simply states that the Defendants were acting within the scope of their employment. (*Id.*). Defendants rely upon the certification in their motion to dismiss. Plaintiff did not offer any evidence, other than Plaintiff's affidavit, to counter the certification. (Doc. 12-1). Plaintiff's affidavit reiterates that arguments made by Plaintiff in his opposition and attests to his desire to "conduct discovery" to present evidence that Defendants "engaged in a cruel pattern of bullying, filing false claims, and prompting grueling investigations workplace [sic]." (*Id.* at 4). Defendants contend that "Plaintiff's self-serving assertions" that Defendants were not acting in the course and scope of their employment and that they were "out to get him" are not "competent evidence to overcome the U.S. Attorney's certification" and carry his burden. (Doc. 15 at 2). Defendants criticize Plaintiff's request for discovery in this regard because he did not "support the request with any explanation of what type of evidence he would seek, or how that evidence would prove that

14

the accusations against him were in fact false, or that his coworkers were motivated exclusively by their own private interests entirely unrelated to TSA business." (*Id*. at 2-3). Defendants characterize the request for discovery as a "fishing expedition". (*Id*. at 3).

Plaintiff did not challenge the scope of employment certification in his motion to remand. (Doc. 20 at 9, 12). The Court considers Plaintiff's opposition to Defendants' motion to dismiss a challenge to the scope of employment certification. In *West v. Rieth*, the Fifth Circuit "examined the correct quantum of proof to refute a U.S. Attorney's scope-of-employment certification." 705 F. App'x 211, 213 (5th Cir. 2017), cert. denied, 138 S. Ct. 1546, 200 L.Ed. 2d 749 (2018). "[G]iven that a plaintiff must show '*in fact*, and not simply as alleged by the plaintiff, [that the employee] engaged in conduct beyond the scope of his employment' to refute scope-of-employment certification, we are persuaded by our sister circuits that 'the party seeking review of the [U.S. Attorney's] decision to grant scope-of-employment certification, bears the burden of presenting evidence and disproving [that] decision ... by a preponderance of the evidence.'" *Id*. (citations omitted).

Plaintiff has failed to present evidence showing it is more likely than not that Defendants were not acting in the scope of their employment during the events forming the basis of this action. Both the Petition and Plaintiff's affidavit allege actions by the Defendants "in the workplace". Neither the Petition, nor the affidavit contain detailed factual allegations which unambiguously show that Defendants were acting outside the scope of their employment. Such bare assertions are insufficient to disprove the United States' decision to grant the scope of certification by a preponderance of the evidence.

Not only did Plaintiff fail to make a sufficient showing to counter the certification, but he also failed to show what discovery is warranted and how that discovery would not be futile.

Discovery is not warranted prior to addressing Defendants' motion pursuant to Rule 12(b)(1). The Court must now analyze Plaintiff's claims against Defendants under the FTCA and determine whether the Court has subject matter jurisdiction to hear this matter.

### B.    Derivative Jurisdiction

Defendants removed the present matter on the basis of the federal officer or agency removal statute, 28 U.S.C. § 1442(a), which permits removal when a civil action is filed in state court against the United States or an agency or officer thereof. (Doc. 1). Section 1442 "results in removal of the entire civil action, including otherwise non-removable claims asserted by and against non-governmental parties." *JAJ Ventures, LLC v. Envtl. Chem. Corp.,* 2009 WL 911020, at *3 (E.D. La. Mar. 31, 2009)(citing *IMFC Prof. Servs. v. Latin Am. Home Health Inc.,* 676 F.2d 152, 156–57 (5th Cir.1982)). The issue is whether the statute confers subject matter jurisdiction on the Court. At the heart of this inquiry is the derivative jurisdiction doctrine, which Defendants argue in their motion to dismiss.

The derivative jurisdiction doctrine "recognizes that a court lacks jurisdiction on removal because it cannot have jurisdiction where the state court from which the action was removed lacked jurisdiction." *In re Katrina Canal Breaches Consol. Litig.,* 2007 WL 1461036, at *2 (E.D. La. May 16, 2007)(citing *Barnaby v. Quintos,* 410 F.Supp.2d 142, 143 (S.D.N.Y.2005)). Although Congress has eliminated this doctrine from removals pursuant to 28 U.S.C. § 1441, *see id.*; 28 U.S.C. § 1441(f), "courts have consistently held that the doctrine still applies to removals pursuant to § 1442." *In re Katrina Canal Breaches Consol. Litig.,* 2007 WL 1461036, at *2. Courts recognize that the doctrine is "arguably outdated and illogical in nature," yet "courts from other circuits continue to apply the doctrine [ ] to matters properly removed pursuant to § 1442." *JAJ Ventures,* 2009 WL 911020, at *3. Furthermore, "in the absence of definitive guidance from the

Supreme Court or the Fifth Circuit, this Court finds no reason to disagree with the rationale of these courts' decisions." *Id.*

In the present matter, the state court lacked jurisdiction over the present matter because the claims were against the United States, as confirmed above regarding the certification of scope of employment. As the FTCA explicitly states that federal district courts have exclusive jurisdiction over tort claims against the federal government, 28 U.S.C. 1346(b)(1), the Louisiana state court never had jurisdiction over the claims against the individually named federal employees. Accordingly, following the great weight of jurisprudence, the Court applies the derivative jurisdiction doctrine and finds that it lacks subject matter jurisdiction over Plaintiff's claims against the individually named Defendants. *See generally Foval v. First Nat. Bank of Commerce,* 841 F.2d 126, 128 (E.D. La.1988).

Further, Defendants correctly point out that Plaintiff did not respond to Defendants' argument that the derivative jurisdiction doctrine deprives the Court of the ability to hear this case; therefore, Defendants contend that Plaintiff's opposition is waived.  (Doc. 15 at 5).  "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003) (citations omitted)); *see also United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation ... is a failure to brief and constitutes waiver"). "By analogy, failure to brief an argument in the district court waives that argument in that court. " *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10).  Therefore, Plaintiff's waiver of his opposition to derivative jurisdiction further supports this Court's finding of lack of subject matter jurisdiction.

In addition, Defendants are correct and Plaintiff concedes that Plaintiff did not present his claims in writing to the TSA to make final disposition prior to filing suit, which is an additional jurisdictional bar. *Cook v. United States*, 978 F.2d 164, 165-66 (5th Cir. 1992). (Doc. 9-1 at 7; Doc. 12 at 8 ("Given the Plaintiff's date of loss occurring in September, 2018, he remains within the two-year delay to begin any FTCA administrative claim process, and should this Court find this matter not be ripe for remand, the Court should instead dismiss this matter without prejudice, allowing him to pursue administrative proceedings ….")).

Having addressed the futility of discovery to address the issue of course of scope and having found that subject matter jurisdiction does not exist based upon derivative jurisdiction, the Court does not deem it necessary to address Defendants' argument of sovereign immunity.

### C. Leave to Amend

When faced with defective allegations, the Court "should freely give a complainant . . . leave to amend[.]" *McClellon v. Lone Star Gas Co.,* 66 F.3d 98, 103 (5th Cir. 1995) (citing Fed. R. Civ. P. 15(a) as grounds for allowing amendment to cure defective allegations in a pleading).

The Fifth Circuit has stated:

> It is provided . . . by 28 U.S.C.A. § 1653 that: 'Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.' The theory seems to be that 'if jurisdiction actually existed from the facts at the time when the complaint was filed, even though not properly pleaded, * * * the formal defect in the pleadings did not deprive the Court of jurisdiction at the time when the action was filed, if such defect was later corrected.' *Stern v. Beer*, 6 Cir., 200 F.2d 794, 795. Cf. *Finn v. American Fire & Causalty Co.,* 5 Cir., 207 F.2d 113, 115.

*Kaufman v. W.U. Tel. Co.*, 224 F.2d 723, 725 (5th Cir. 1955). Section 1653 "like rule 15(a) should be liberally construed." *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981).

Here, even with a liberal interpretation, the jurisdictional allegations are not supported by

any facts indicating that Defendants were not acting within the course and scope of their employment, and, therefore, are defective. Nevertheless, rather than an outright dismissal of the complaint for failure to allege such facts, the Court should afford Plaintiff an opportunity to allege or show that Defendants were not acting within the course and scope of their employment before their complaint is dismissed on these grounds.  Thus, in the absence of any bad faith or undue delay on the part of Plaintiff or undue prejudice to Defendants, they should be allowed an opportunity to amend.  *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 230 (1962).

Further, while Plaintiff has not yet requested an opportunity to amend, the Court nonetheless has inherent power to order such an amendment. *See McClellon,* 66 F.3d at 100 (quoting the magistrate judge's *sua sponte* order requiring an amended complaint). The appropriate remedy when granting a motion to dismiss based on deficient pleadings is to grant the complainant time to amend the complaint; if the complainant fails to do so, then the district court may strike the pleadings or dismiss the case. *McClellon*, 66 F.3d at 103. Thus, in the interest of justice and of orderly procedure, the Court will allow Plaintiff an opportunity to amend his complaint. *E.g. Neal v. State of Ga.,* 469 F.2d 446, 448-50 (5th Cir.1972) (reasoning that the trial court should have allowed amendment under 28 U.S.C. § 1653).

The Court does not place restrictions on the amendment or specific instructions as to the scope of the amendment; however, the Court reminds Plaintiff of Rule 11.  Plaintiff should be thoughtful of not only the good faith grounds of his amendment, but also judicial economy.  If Plaintiff does not believe that he can amend in line with Rule 11, it is incumbent upon Plaintiff to admit same and avoid a waste of judicial resources.

**IV.    Conclusion**

Accordingly,

      **IT IS ORDERED** that the individually named Defendants' *Motion to Dismiss* (Doc. 9) is

**GRANTED;**

      **IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are **DISMISSED**

**WITHOUT PREJUDICE** for lack of subject matter jurisdiction; and

      **IT IS FURTHER ORDERED** that Plaintiff shall have twenty-eight (28) days from the

issuance of the Court's ruling in which to amend his Complaint. If Plaintiff fails to do so, the Court

will enter a final judgment dismissing the case against Defendants without prejudice.

      Signed in Baton Rouge, Louisiana, on __August 25, 2020__.

                                 _____

                                   **JUDGE JOHN W. deGRAVELLES**
                                   **UNITED STATES DISTRICT COURT**
                                   **MIDDLE DISTRICT OF LOUISIANA**